08-23440.o6

## UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case Number: 08-23440-CIV-BROWN

HUGH CHRISTOPHER HODGE,

     Plaintiff,

vs.

WALTER MCNEIL, et al.,

     Defendant(s)

_____/

## ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

**This matter** is before the Court on Plaintiff's Motion for Summary Judgment as to

Defendants Walter McNeil and the Florida Department of Corrections ("DOC") (D.E. 217). The

Court has considered the Motion, the Response, the Reply, and all pertinent materials in the file.

## FACTS

On December 12, 2008, Plaintiff, Hugh Christopher Hodge, filed an initial Complaint

against Defendants, Florida Department of Corrections and Walter McNeil, and several Co-

Defendants (D.E. 1). Subsequently, Plaintiff filed a Second Amended Complaint, under 42

U.S.C. § 1983 and the Americans with Disabilities Act ("ADA"), seeking injunctive, declaratory,

and monetary relief (D.E. 16). Specifically, Plaintiff alleged that "discrimination based on

handicap(s) denied equal protection to Defendant's medical services." (D.E. 16).

On March 25, 2011, Plaintiff filed the pending Motion, Plaintiff's Statement of Facts and

Motion for Summary Judgment as to Defendants, Florida Department of Corrections and Walter McNeil, In His Official Capacity. The Motion alleges that Defendants violated the ADA by failing to provide the Plaintiff with adequate medical care and Plaintiff is entitled to Summary Judgment pursuant to Fed. R. Civ. P. 56(c) (D.E. 217).

## DISCUSSION

### I. Motion for Summary Judgment Standard

The purpose of summary judgment is "to pierce the pleadings and assess the proof in order to see whether there is a genuine need for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56 advisory committee's note). Summary judgment is proper only when no genuine dispute as to any material fact exists and the moving party is entitled to a judgment as a matter of law. H&R Block Eastern Enterprises, Inc. v. Morris, 606 F.3d 1285, 1290 (11th Cir. 2010); Fed.R.Civ.P. 56.[1]

The moving party bears the initial burden of explaining to the Court the basis for the motion and identifying those portions of the record that demonstrate that there is no genuine dispute of material fact. Allen v. Board of Public Educ. for Bibb County, 495 F.3d 1306, 1313 (11th Cir. 2007). Thus the movant must either show that the nonmoving party has no evidence to support its case, or present "affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1438 (11th Cir. 1991); Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1260 (11th Cir. 2004). However, the Court must view all of the evidence in the light most favorable to the

---

[1]An issue of fact is material if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

nonmoving party, with all reasonable inferences also being drawn in the nonmovant's favor. Info. Sys.& Networks Corp. v. City of Atlanta, 281 F.3d 1220, 1224 (11th Cir. 2002); Siemens Power Transmission & Distribution, Inc. v. Norfolk Southern Railway Co., 420 F.3d 1243, 1248 (11th Cir. 2005). If the movant is able to demonstrate either of the aforementioned requirements, the burden shifts to the nonmoving party to show that a genuine dispute remains for trial. Dietz v. Smithkline Beecham Corp., 598 F.3d 812, 815 (11th Cir. 2010).

A genuine dispute as to material fact exists only when "a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986); Allen, 495 F.3d at 1313; Hickson Corp., 357 F.3d at 1260. Where a reasonable fact finder may "draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant the summary judgment motion." Doe v. School Bd. of Broward County, Fla., 604 F.3d 1248, 1254 (11th Cir. 2010) (quoting Samples ex rel. Samples v. City of Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988)). However, if the facts and inferences overwhelmingly favor one side, such that a reasonable jury could only arrive at one verdict, then summary judgment must be granted as a matter of law. Williams v. Dresser Indus., Inc., 120 F.3d 1163, 1167 (11th Cir. 1997); Bishop v. City of Birmingham Police Dept., 361 F.3d 607, 609 (11th Cir. 2004). For the non-movant to survive such a grant, there must be more than a mere scintilla of evidence. Williams, 120 F.3d at 1167.

**II. Americans with Disabilities Act Standard**

Congress passed The Americans with Disabilities Act of 1990 "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1) (1990). Under the ADA, "no qualified individual with a

disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132 (1990).

The statutory language of the ADA "unmistakably includes State prisons and prisoners within its coverage." Pa. Dep't of Corr. v. Yeskey, 524 U.S. 206, 209 (1998). To bring a claim under Title II of the ADA, the plaintiff must allege: (1) he is a "qualified individual with a disability"; (2) he was "excluded from participation in or . . . denied the benefits of the services, programs, or activities of a public entity" or otherwise "discriminated [against] by such entity"; (3) "by reason of such disability." Shotz v. Cates, 256 F.3d 1077,1079 (11th Cir. 2001).

A "qualified individual with a disability" is defined under the ADA as "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2) (1990). For purposes of the ADA, a disability is: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment. 42 U.S.C. § 12102(2) (1990).

When evaluating whether an impairment substantially limits a major life activity, courts consider: "(1) the nature and severity of the impairment; (2) the duration or expected duration of the impairment; and (3) the permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment." Gordon v. E.L. Hamm & Assoc., Inc., 100 F.3d 907, 911 (11th Cir. 1996). However, "[a] physical impairment, standing alone . . . is not

necessarily a disability as contemplated by the ADA." Id.

## ANALYSIS

As Plaintiff correctly points out in his Motion, "[r]arely, if ever, do U.S. District Courts grant Summary Judgment in favor of the Plaintiff for American with Disabilities Act ("ADA"), Title II violations." (D.E. 217, p.1)[2]. Beyond this statement, the Court does not agree with any of Plaintiff's contentions. Plaintiff's Motion is filled with cases that are not binding on this Court and statements lacking citations to the record. Due to the Motion's deficiencies, this Court finds the Plaintiff is not entitled to summary judgment.

Plaintiff notes "that the analysis under the ADA is the same as a violation under the Eighth Amendment" (Mot. p. 9). However, this statement is an oversimplified version of the holding in the cited case. See U.S. v. Georgia, 546 U.S. 151, 159 (2006). Under the Supreme Court's holding, "insofar as Title II creates a private cause of action for damages against the States for conduct that *actually* violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity." Id. Further, the Supreme Court instructed the lower courts to determine on a claim-by-claim basis:

> (1) which aspects of the State's alleged conduct violated Title II;
> (2) to what extent such misconduct also violated the Fourteenth
> Amendment; and (3) insofar as such misconduct violated Title II
> but did not violate the Fourteenth Amendment, whether Congress's
> purported abrogation of sovereign immunity as to that class of
> conduct is nevertheless valid.

Id. Thus, ADA analysis must first satisfy the previously mentioned Title II criteria (See section

---

[2] Indeed, no such decisions are cited in Plaintiff's motion. The Court's research has failed to uncover any, even cases reversed (much less affirmed) from the lower courts. "Rarely" may be an understatement.

II), then a constitutional analysis is proper. The constitutional analysis does not necessarily have to pertain solely to the Eighth Amendment, but could be based on other constitutional provisions. See id.

Applying the standard to the case at hand, Plaintiff has not proven the Defendants' alleged conduct violated Title II. First, even when viewed in a light most favorable to the Plaintiff, the Plaintiff did not prove he is a qualified individual with a disability. While Plaintiff has stated he was confined to a wheelchair at times throughout his incarceration, he has not alleged that such confinement limits his major life activities[3]. Under the ADA, "[m]erely proving the existence of a physical impairment, without addressing any limitation on major life activities, is not sufficient to prove disability under the Act." Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1327 (11th Cir. 1998).

Further, the length of time Plaintiff was confined to his wheelchair is insufficient to constitute a disability (Part II). The duration of Plaintiff's impairment was limited, not permanent. His confinement to a wheelchair was based on the his initial bodily injuries from the car accident and the recovery time after the total knee replacement (D.E. 217). Confinement to a wheelchair for periods of time during recovery does not rise to a severe level of restricting major life activities. See Gordon, 100 F.3d at 911.

Plaintiff also did not show he was "excluded from participation in or . . . denied the benefits of the services, programs, or activities of a public entity." See Shotz, 256 F.3d at 1079.

---

[3] Major life activities include the operation of a major bodily function, including but not limited to caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working. 42 U.S.C. § 12102(2)(A) (1990).

While Plaintiff alleges "medical care was denied, delayed and/or inadequate as to amount to no treatment at all," it does not rise to a level of exclusion or denial of services (Mot. p. 9). The Plaintiff was provided with care throughout the time period in question and his unhappiness with any delays does not meet the standard under Title II. For instance, Plaintiff cites the "denial of medications" as an alleged denial under the ADA (Mot. p. 14). However, Plaintiff was provided with Tylenol III, so use of the phrase "denial of medications" is an overstatement regarding the quality of care provided (Mot. p. 4).

Additionally, even if Plaintiff could prove he was a qualified individual that was discriminated against, the Motion does not contain facts to establish a connection between the alleged discrimination and his disability. Plaintiff even contends in the record that there "is a jury question for the trier of fact" regarding the connection between the denial/delay of medical treatment and Plaintiff's injuries (D.E. 196, p. 6). Even Plaintiff's expert, Dr. Clark, evaluated Plaintiff's pain management issues and could not "identify anything . . . as far as the medical treatment that [he] would classify as an ADA violation" (Clark Depo., p. 116). Accordingly, the Motion does not establish that there are no genuine issues of material fact to warrant summary judgment in Plaintiff's favor.

Further, setting aside Plaintiff's failure to state a Title II claim, Plaintiff is unable to show the extent to which the misconduct also violated the Fourteenth Amendment under the Georgia analysis. See Georgia, 546 U.S. at 159. Plaintiff relies on the deliberate indifference standard of the Eighth Amendment in his attempt to make a claim. However, Plaintiff does not establish the necessary subjective intent on behalf of the named Defendants. See Farmer v. Brennan, 511 U.S. 825, 837 (1994). Parts of the Motion are identical to Plaintiff's previous motion for summary

judgment against Defendant Dr. Balmir (D.E. 216). For example, Plaintiff states that "[r]efusal to follow a specialist's recommendations can result in deliberate indifference" (Mot. p. 16). The previous motion attributed the refusal to Dr. Balmir (D.E. 216, p. 15). The current Motion does not make any contention about Defendant McNeil refusing or the DOC being responsible for any such refusal under a theory of supervisor liability. As a result, Plaintiff does not allege any conduct that rises to a level of deliberate indifference, but merely restates a previously unpersuasive argument.

Lastly, Plaintiff references "a five (5) day delay for surgery after his knee was shattered" (Mot. p. 15). This surgery is not contained in the facts[4]. Therefore, the Court does not know which surgery Plaintiff is referring to. Even if there was any such indication, the subsequent statement, "[t]hese delays are significant. These facts are not in dispute" is unsupported in the record. At best, there is a factual question as to whether a five-day delay is significant.

Therefore, and the Court being otherwise fully advised in the premises, it is hereby

**ORDERED AND ADJUDGED** that the Motion for Summary Judgment is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida this 25th day of July, 2011.

_____
STEPHEN T. BROWN
CHIEF UNITED STATES MAGISTRATE JUDGE

cc:     Counsel of record

---

[4]The Court notes that Plaintiff previously redacted the same statement in Plaintiff Response on March 11, 2011 (D.E. 212). However, no such redaction has been made in regard to the pending Motion.